# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 24-CR-544 (APM)** |
| | ) | |
| **v.** | ) | **Status: July 25, 2025, 10:00 a.m.** |
| | ) | |
| **JAMES CARROLL** | ) | |

## DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Defendant James Carroll, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142, and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Carroll has (1) significant connections to the community, (2) zero criminal history, and (3) no ability to flee. The government has failed to set forth sufficient facts to find that Mr. Carroll is either a danger to the community or a serious risk of flight. Mr. Carroll asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

Specifically, the following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Carroll's appearance in court and the safety of the community.

- Turn over any passports and agree not to procure another passport;

- Home incarceration with electronic monitoring at the family home, the address of which will be provided to pretrial services;

- Third party custodian – specifically, his spouse, who has no criminal record, has a history of university education and significant professional ties, and who works out of the family home;

- No use of electronic devices or the internet in any form, – all contact with legal counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

- o  Access of electronic devices will be prevented and monitored by the third party custodian;

- •  Remain in the District of Columbia, unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- •  Report on a "regular basis" to PTS or some other agency as directed, *id*. § 3142(c)(1)(B)(vi);

- •  Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- •  Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- •  Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

## I.    Background

Mr. Carroll was arrested on November 19, 2024, pursuant to a criminal complaint charging him with attempted coercion and enticement of a minor. The government asked for detention and, after one request for a continuance from Mr. Carroll, a detention hearing was set for December 18, 2024. A grand jury returned a two count Indictment against Mr. Carroll on December 4, 2024, charging him with attempted sexual exploitation of a minor and attempted coercion and enticement of a minor. The government argued that detention is appropriate under 18 U.S.C. § 3142(f)(1)(A) and (f)(2)(A). On December 13, 2024, represented by predecessor counsel, the defense did not contest detention, without prejudice to seek pretrial release in the future. *See* Motion to Vacate Detention Hearing ECF 13 ("At this time, Mr. Carroll concedes detention without prejudice to raise the issue at a later date"). With the change in counsel and counsel's review of the indictment and discovery, this motion for bond release follows.

## II.    Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released

pending trial on personal recognizance or "subject to the *least restrictive* further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B) (emphasis added). The U.S. Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  "It is only a 'limited group of offenders' who should be [detained] pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405.

Under 18 U.S.C. § 3142(e)(3)(E) a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely

than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence for Mr. Carroll to be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

Finally, as relevant here, pursuant to the Bail Reform Act, if the government moves for detention alleging that there is a "serious risk" that the person will flee and the Court finds as such, a judicial officer may then determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(2)(A). "A determination that an individual is a serious risk of flight must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986) (per curiam)).

## III.    Mr. Carroll Can Rebut the Presumption of Detention with Credible Evidence

Mr. Carroll can rebut the presumption of detention with "some credible evidence" that there are conditions which would reasonably assure his appearance and the safety of the community. First, Mr. Carroll has strong ties to the community. Mr. Carroll has lived in Washington, D.C. for 20 years. His wife, youngest son, and his wife's extended family all live in D.C. He built his life in this community and has every incentive and desire to remain here. Mr. Carroll has always been a loving and dedicated father. His two sons are now adults, one in college and one about to begin college in the fall. He has no intent or desire to flee and remove himself from his family. He wants to continue to be present to support and encourage them in their adult

lives.  Mr. Carroll also has zero criminal history.

The foregoing facts rebut the presumption of detention in this case.

**IV.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Carroll is a Flight Risk or Danger to the Community**

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that defendant must pose actual danger to community, not that defendant in theory poses danger to the community). The government has not and cannot meet its burden here and Mr. Carroll should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Carroll's appearance at trial and protect the public.

There is also not a "serious risk that [he] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat

statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *Gibson*, 384 F. Supp. 3d at 965) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight, then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017).

The Bail Reform Act's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[1] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and

---

[1] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection (f)(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in noncapital case defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

no such showing has been made here.

Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act authorizes detention "only upon proof of a likelihood of flight." *Id.* at 160. The "preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful—can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Mr. Carroll is a "serious" risk or that there are no conditions of release which would be sufficient to assure his appearance. Although Mr. Carroll was born in the United Kingdom, he has lived in the United States for 20 years and his life and family are here. Mr. Carroll will forfeit his passport and will agree to location monitoring. He is married to a U.S. citizen and has two U.S. citizen children. Mr. Carroll became a legal permanent resident in 2004 and has an interest in maintaining and every intention to maintain that status.

The D.C. Circuit has held that a defendant's ability to flee the country based merely on ties to a foreign country, without evidence that he is *likely* to flee, cannot serve as the basis for pretrial detention. *See Xulam*, 84 F.3d at 443. In *Xulam*, the court rejected the government's contention that the defendant—an immigrant from Turkey who was charged with falsifying information on a passport and who had only been in the country for three years—should be denied bail because nothing could stop him if he decided to flee. *Id.* at 444. The Court of Appeals explained: "That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.*; *see United States v. Himler*, 797

F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention."); *Motamedi*, 767 F.2d at 1408 (revoking detention order for Iranian citizen accused of illegal arms deals who allegedly had large bank accounts abroad and ability to return to Iran with impunity). Even in *Xulam*, when the defendant was charged with passport fraud, suggesting at least a willingness to seek false documents that would allow him to leave the United States, the risk of flight was insufficient to detain the defendant.

There is no evidence here of anything more than Mr. Carroll's foreign citizenship. This is not enough. The government has not demonstrated that Mr. Carroll presents a *likelihood* of flight—and he, in fact, does not present a serious risk of flight.

On the facts of this case, the government not only has not demonstrated a likelihood of flight, but also cannot demonstrate that Mr. Carroll in fact has the ability to flee. While Mr. Carroll is a citizen of the United Kingdom, prior to being released he will surrender his passport and, with no passport, surrender any ability to flee to the UK or anywhere else. He will also be on home confinement with real-time GPS monitoring. He is ineligible for a U.S. Passport, and the Court can require that he not obtain another passport while on pretrial release. *See Xulam*, 84 F.3d at 444 ("On a more practical level, the government has taken away all his passports and travel documents, so it is unlikely he could go far even if he wished to."). Without a passport, he cannot travel.

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2)(A) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government has not met its burden to seek detention of Mr. Carroll as a

"serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

## V.    The § 3142(g) factors support release

### A.    The Nature and Circumstances of the Offense

The Indictment charges Mr. Carroll with attempted sexual exploitation of a minor and attempted coercion and enticement of a minor. While the charges and allegations are undoubtedly serious, there is no evidence that Mr. Carroll engaged in any violence toward any minor or engaged in anything other than talk. The allegations all stem from a conversation with an undercover officer. Nor have the allegations grown since Mr. Carroll's arrest or since his indictment in December 2025. There is no allegation of any improper contact with any minor child. There is no allegation of any attempted direct contact with any minor child. There is no allegation of any improper contact with his now-young adult sons at any point in their lives. Beyond words alone in chats with an undercover officer about a fake, fantasy scenario, the allegations against Mr. Carroll are far less detailed, broad, and serious than other defendants charged under these, and related statutory provisions.

### B.    The Weight of the Evidence

The weight of the evidence does not provide clear and convincing evidence that Mr. Carroll would be a danger to the community or a serious risk of flight if released. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). But there is not overwhelming evidence of guilt in this case. The government itself cited to *United States v. Nitschke*, 843 F. Supp. 2d 4, 16 (D.D.C. 2011), where Chief Judge Boasberg dismissed a charge of attempted coercion and enticement, finding that even in a case where the defendant spoke to an undercover officer and made a plan to meet up and sexually abuse a minor, there was no evidence of intent to persuade using interstate commerce,

a required element of the offense. Here, not only are there no allegations that Mr. Carroll ever sought to meet the undercover agent and his purported child, but there is also no evidence that Mr. Carroll intended to persuade a minor using interstate commerce. Just like in *Nitschke*, there is no evidence that Mr. Carroll, "sought . . . help in procuring the fictitious minor," "ask[ed] [the agent] to pass along any communication whatsoever to the minor," "ma[de] any promises to the minor through [the agent]," or "offer[ed] any money or anything else of value," or "invite[d] [the agent] or the minor anywhere." *Id*. at 13.[2] Nor, as to the § 2251(a) offense is that evidence that Mr. Carroll's words were "for ***the purpose of*** producing a visual depiction" of sexually explicit conduct. (emphasis added). Indeed, evidence as to the charges is so slight that the defense anticipates filing a pretrial motion to dismiss both charges in advance of trial. The weight of the evidence is lacking and supports release.

C.       The History and Characteristics of Mr. Carroll

As described above, Mr. Carroll has lived in the D.C. area for over 20 years. He built his life here and has no intention or desire to be elsewhere. His wife and her extended family are originally from the area and live here. He raised his children here and his youngest is about to graduate from high school, while his oldest is currently in college. Mr. Carroll has no reason to flee. In fact, he has every reason to remain in the United States to fight this case.

Additionally, Mr. Carroll has no criminal history, let alone a history of dangerousness or failing to comply with court supervision. As suggested below, Mr. Carroll will be on electronic monitoring if released and under the supervision of a third party custodian. Mr. Carroll has been gainfully employed throughout his two decades living in the United States. Obviously, he will be severely limited in his ability to work while on home incarceration without access to the internet.

---

[2] For the same reasons, evidence of intent to create an image or solicit a minor is also lacking.

He nonetheless will seek potential employment at home. More crucially, he will assist his wife with the care of the household and the raising of their children, particularly as their younger son uses this summer to transition from high school and prepare to attend university in the autumn. Both the safety of the community and his appearance at court can be reasonably assured with these conditions.

Mr. Carroll's history and characteristics do not provide any support for a finding that he is a serious risk of flight or a danger to the community. There are conditions that will reasonably assure his appearance and Mr. Carroll must be released.

D.    *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Carroll's Release*

The government has not and cannot provide any evidence, let alone clear and convincing evidence, to support a finding that Mr. Carroll would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Carroll poses an *unmitigable* threat to public safety.

The government may argue that Mr. Carroll could commit another crime if he had access to electronic devices during his pretrial release. Mr. Carroll's proposed conditions of release specifically deal with this concern, by limiting his access to devices and requiring that his family maintain the security of their devices by changing passcodes and keeping them locked up or with them when they are not in the home. There is no evidence that Mr. Carroll would refuse to comply with these specific conditions of release. Without access to the internet or electronic devices, the government's concerns about dangerousness evaporate.

The government has not provided sufficient evidence for the Court to find that no combination of conditions could reasonably ensure the safety of the community and Mr. Carroll's appearance at court and he must be released.

## VI. Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Carroll Does Not Pose a Serious Risk of Flight or Danger to the Community

In this case, this Court can be guided by Administrative Office of the Courts' statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[3] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[4] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[5] The below chart reflects these data:

---

[3] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[4] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[5] *See* AO Table H-15; AO Table H-14A.



**VII.    Mr. Carroll Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety**

Mr. Carroll must be released because there are conditions that will reasonably assure the safety of the community and his appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7ᵗʰ Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Carroll's appearance in court. Thus, Mr. Carroll cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Carroll's appearance in court and the safety of the community.

•    Turn over any passports and agree not to procure another passport;

- Home incarceration with electronic monitoring;

- Third party custodian – his spouse, who has no criminal record, and a history of university education and significant professional ties, and who works out of the home;

- No use of electronic devices or the internet in any form, – all contact with legal counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

  o All access of electronic devices will be monitored by the third party custodian;

- Remain in the District of Columbia, unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- Report on a "regular basis" to PTS or some other agency as directed, *id.* § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id.* § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id.* § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id.* § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Carroll's appearance in court and the safety of the community, he must be released.

**VIII.   Conclusion**

For the foregoing reasons, Mr. Carroll respectfully requests that this Court release him with conditions.

Respectfully submitted,

/s Edward J. Ungvarsky
Edward J. Ungvarsky, Bar No. 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC: 202 546 1500
VA: 571 207 9710
Cell: 202 409 2084
Email: ed@ungvarskylaw.com

14

Counsel for James Carroll

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing <u>Motion for Bond </u>was served on the government, via electronic filing, on this 11th day of July, 2025.

<u>/s/ Edward J. Ungvarsky</u>
Edward J. Ungvarsky