## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-cr-544(APM)** |
| **JAMES CARROLL,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT JAMES CARROLL'S MOTION FOR PRETRIAL RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that the defendant James Carroll be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(e)(3)(E) (rebuttable presumption in favor of detention), 18 U.S.C. §3142(f)(1)(A) (crime of violence), and 18 U.S.C. §3142(f)(2)(A) (serious risk of flight), of the federal bail statute because there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of any person or the community.

The defendant was arrested on November 19, 2024, following an online chat conversation with an undercover officer posing as the father of a young child.  During the conversation, the defendant directed the undercover officer on how to abuse his purported minor son, including asking the officer to show the child adult pornography and telling the officer what to say to the child to groom him for the abuse. The defendant then followed up with the officer to ask about whether he successfully abused the child. When the officer offered to abuse the child again and produce a recording for the defendant, the defendant not only indicated that he wanted the video

of the abuse, but also asked that the video include specific acts of sexual abuse against the child that the defendant desired to see for his own sexual gratification. A search of the defendant's Discord account further revealed that the defendant had repeatedly discussed the sexual abuse of children with other individuals online.

On December 4, 2024, a Grand Jury sitting in the District of Columbia with returned a two-count indictment charging the defendant with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. §2422(b) and Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a).  ECF No. 11.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is appropriate.

## PROCEDURAL HISTORY

On November 18, 2024, Magistrate Judge Sharbaugh signed a criminal complaint and arrest warrant charging the defendant with one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).  ECF No. 1.  On November 19, 2024, law enforcement agents arrested the defendant.  ECF No. 5, 6. The same day, the defendant appeared before the court for an initial appearance. At the initial appearance, the government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and 3142(f)(2)(A). The parties agreed to schedule the detention hearing on November 25, 2024.  On December 4, 2024, a Grand Jury sitting in the District of Columbia returned a two-count indictment charging the defendant with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. §2422(b) and Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a).  ECF 11.   After one continuance requested by the defendant, a detention hearing was set for December 18, 2024.  Before the hearing was held, the defendant represented through counsel that he did not wish to contest detention at that time but reserved the right to challenge his detention later.  On July 11, 2025, the Defendant

filed a Motion for Pretrial Release. (ECF No. 25). The Government now files this Memorandum in opposition to the Defendant's Motion for Pretrial Release pursuant to the above-referenced detention statutes.

## FACTUAL BACKGROUND

The United States relies on the facts set forth in the Affidavit in Support of Criminal Complaint (24-MJ-00361), ECF No.1, as well as the following:

On September 11, 2024, an employee of Discord sent a Cyber Tip to the National Center for Missing and Exploited Children ("NCMEC") reporting that a file containing suspected child sexual abuse material ("CSAM") had been uploaded to Discord servers on the same day. According to the Discord employee, the file had been uploaded by someone with the username CIRCUMCISEDLONDONGAY#0 and the Discord user ID 1116848970593996911. This account had last been accessed from an internet protocol address ("IP address") of 69.140.197.22, which resolved in Comcast Cable in Washington, D.C. NCMEC forwarded the report, along with the file containing the suspected CSAM to the Northern Virginia-District of Columbia Internet Crimes Against Children Task Force for further investigation. A law enforcement officer reviewed the image of suspected CSAM (which had previously been viewed by a Discord employee) and observed that the image depicted two naked prepubescent boys lying on a piece of furniture. The first boy is naked and is reclining on the furniture with his legs extended in front of him. He appears to be propping himself up slightly on his elbow and is looking down at his exposed penis. The second boy is next to the first boy on the furniture and appears to be naked but the lower half of his body below the waist is not visible in the photo. The second boy is leaning in toward the first boy's crotch area and his eyes are focused on the first boy's exposed penis.

Discord reported that the user that had uploaded this image, CIRCUMCISEDLONDONGAY#0, had registered the account with the phone number (202)-355-XXXX and the email address jscusaXXXX@gmail.com.  Discord also provided numerous IP addresses used to access the account between September 23, 2023, and September 11, 2024, which included the reported Comcast IP address of 69.140.197.22 and a Comcast Business IP address of 50.242.193.61.

In response to legal process, AT&T provided records related to the phone number (202) 355-XXXX, which showed the account was registered to James S. Carroll with email address jamescarrollXXX@gmail.com, a billing address of XXXX Chancery Court N.W., Washington, D.C. 20007, and a user address of 3500 Woodley Road, N.W. Washington, D.C. 3500 Woodley Road is the location of the Beauvoir School, which is associated with the National Cathedral Elementary School, and was James Carroll's former employer.

In response to legal process, Google provided records related to jscusaXXXX@gmail.com, which showed that the account was registered under the name "JSC USA" and an email of JamescarrollXX@hotmail.com, and a phone number of (202) 355-XXXX (the same phone number associated with the Discord account CIRCUMCISEDLONDONGAY#0).

In response to legal process, Comcast Cable provided records related to the IP address 69.140.197.22 (the IP address associated with the Discord account).  These records indicated that the account is registered to James Carroll of XXXX Chancery Court, N.W. Washington, D.C. with a phone number of (202) 355-XXXX and an email address jamescarrollXXX@comcast.net. In response to legal process, Comcast Cable provided records related to the IP address 50.242.193.61, which had been used to access the CIRCUMCISEDLONDONGAY#0 Discord account on numerous occasions since September 2023.   Comcast Business reported that the account is

registered to the National Child Research Center at 3209 Highland Place in Northwest, Washington, D.C. 20008. Investigators conducted an open-source review of databases and found that James Stewart Carroll is the publicly listed Head of School for the National Child Research Center (NCRC). The NCRC is an early childhood education center located at 3209 Highland Place, N.W., Washington, D.C., which enrolls children ages two through five years old.

In response to a search warrant, Discord provided records related to CIRCUMCISEDLONDONGAY#0. These records revealed that the user had repeatedly engaged in conversations with other Discord users about child sexual exploitation, including sexual gratification derived from the circumcision of boys, urinating on teenage boys and adults, and the removal of adult male penises. Among the records produced by Discord were the chat messages that took place on the platform between CIRCUMCISEDLONDONGAY#0 and a Discord user with the display name "41UC#0." This chat began on September 6, 2024, when Carroll, using the CIRCUMCISEDLONDONGAY#0 account, sent a direct message to another Discord user, with the display name 41UC#0. 41UC#0 joined the chat on September 10, 2024, and after some introductory comments, 41UC#0 asked Carroll "so when did you get cut" --apparently referring to circumcision. Carroll responded, "at age 10." The pair then discussed Carroll's experience with circumcision as a child. The chat continued into the next day. On September 11, 2024, 41UC#0 asked if the idea of his being circumcised in order to discourage masturbating was a "turn on" for Carroll. Carroll responded, "It is now yes! The idea of altering a boy." 41UC#0 asked, "what age should they be altard (sic)?" and Carroll responded, "around that time. 9-11. Just pre pubescent." The pair continued to discuss circumcision of boys and Carroll stated that he was "turned on" as he was "thinking of boys that age and look [sic]." Carroll then stated, "I'll see if I can scan any of my boy pics with some nudity." Carroll added, "I do sometimes look at pics of

boys anyway" and then he asked, "u ever like looking at boy pics too?"  41UC#0 responded that he liked to look at circumcision-related images.  41UC#0 asked Carroll, "any more hot pics" and Carroll responded, "Looking."  Carroll then sent the image described above depicting the two naked prepubescent boys looking at one boy's penis.  41UC#0 responded, "Looking at it the day before his circ." Carroll agreed, "yeah' and 41UC#0 added, "little brother will be done in a few years. Should younger brother watch him get cut?"  The chat then abruptly ended as Discord had shut down Carroll's CIRCUMCISEDLONDONGAY#0 account after detecting the image uploaded by Carroll and reporting it to NCMEC as suspected CSAM.

 The records produced by Discord in response to the search warrant also revealed that the CIRCUMCISEDLONDONGAY#0 Discord account had been associated with two other Discord accounts: (1) LUKEUKCIRC#0 (User ID 1283408407868604519); and (2) SAMMYSAMUSA#0 (User ID 1283295411561304108).

In a response to legal process, Discord produced records showing that LUKEUKCIRC#0 was registered with Discord on September 11, 2024 – the same day that Discord had made its Cyber Tip to NCMEC and had closed the CIRCUMCISEDLONDONGAY#0 account. The records further showed that the LUKEUKCIRC#0 account had been registered from the IP address 50.242.193.61 (the IP address associated with NCRC school).  The email address associated with the LUKEUKCIRC#0 account was jamescarrollXX@hotmail.com.

Discord produced records showing that SAMMYSAMUSA#0 was also registered on September 11, 2024, from IP address 69.140.197.22 (the IP address associated with Carroll's residence).      SAMMYSAMUSA#0    was    registered    with    email    address jamescarrollXXX@hotmail.com.

On November 5, 2024, an undercover law enforcement officer (UC) assigned to the Metropolitan Police department and Federal Bureau of Investigation's Child Exploitation and Human Trafficking Task Force (CEHTTF), working out of a satellite office within the District of Columbia, used a UC account to contact LUKECIRC#0. Using this account, Carroll responded to the UC and asked, "you found me and friended me?"  The UC told Carroll that he was looking for other people interested in circumcision.  The UC told Carroll that he "had no limits except scat. Hate that."  Carroll responded, "SAME!!" The UC added, "Younger the better" and Carroll responded, "Ooo nice … Tell me more about that …" The UC stated that he liked "smooth and innocent … preferably little boys but girls do it for me too.  You?"  Carroll responded, "boys only" and stated that his age preference was "8-12."

The UC asked Carroll if he had any experience and Carroll responded, "Just hoping/dreaming/fsntasizing (sic) u?"  The UC told Carroll that he had "a bit" of experience and was the father of nine-year-old boy. Carroll asked the UC a series of probing questions, asking him to describe the sexual abuse of his purported child. Then, Carroll introduced the idea of drinking the purported child's urine.  [Carroll's messages appear in green and the UC's messages appear in blue]:





From:
I'm a degenerate and love sharing

11/5/2024 7:11:13 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x4C8D (Size: 26771 bytes)

From: 128340840786680451.9.lukeukcirc#0 (owner)

Mmmmmm

11/5/2024 7:11:17 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x4C1A (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130057235932993676.2.csv : 0x9E
(Size: 8750 bytes)

From: 128340840786680451.9.lukeukcirc#0 (owner)

I love that u cum on him

11/5/2024 7:11:32 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x4B95 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130057235932993676.2.csv : 0x9E
(Size: 8750 bytes)



From:
Mmmhhhmmm

11/5/2024 7:11:39 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :



From: ▇▇▇▇▇▇▇▇▇▇

It's so hot seeing it on his little body

11/5/2024 7:12:04 PM(UTC-5)

Source Info:
4586cc3adad84cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4A8E (Size: 29771 bytes)

From: 1293408407868804519 lukeukcirc#0 (owner)

I bet
Fuck

11/5/2024 7:12:21 PM(UTC-5)

Source Info:
4586cc3adad84cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4A54 (Size: 26771 bytes)
4586cc3adad84cd2b4a905fd61562b27.zip/messages/dms/1300572358329936762.csv : 0x9E
(Size: 6750 bytes)

From: 1293408407868804519 lukeukcirc#0 (owner)

Perfect

11/5/2024 7:12:35 PM(UTC-5)

Source Info:
4586cc3adad84cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4BAD (Size: 26771 bytes)
4586cc3adad84cd2b4a905fd61562b27.zip/messages/dms/1300572358329936762.csv : 0x9E
(Size: 6750 bytes)

From: 1293408407868804519 lukeukcircf#0 (owner)

Where on his body?

11/5/2024 7:13:26 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4921 (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1300572356829936762.csv : 0x9E
(Size: 675D bytes)



From: [redacted]

His tummy and chest.  Sometimes on an ass cheek

11/5/2024 7:14:40 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv : 0x4888 (Size:
26771 bytes)



From: [redacted]

Those were the good ol days

11/5/2024 7:14:47 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x47FE (Size: 26771 bytes)

From: 1293408407868804519 lukeukcircf#0 (owner)

Ah yeah!!!

11/5/2024 7:15:08 PM(UTC-5)

Source Info:

From: 1283408407868004519 lukeukcirc#0 (owner)
What age u do that?

11/5/2024 7:15:21 PM(UTC-5)

Source Info:
4686cc3aded04cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv : 0x4707 (Size: 26771 bytes)
4686cc3aded04cd2b4a905fd61562b27.zip/messages/dms/130057235082993676z.csv : 0x9E (Size: 8750 bytes)

From: ▮▮▮▮▮▮▮▮▮▮
2-5ish. I had to get smart and start training him

11/5/2024 7:16:33 PM(UTC-5)

Source Info:
4686cc3aded04cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv : 0x466B (Size: 26771 bytes)

From: 1283408407868004519 lukeukcirc#0 (owner)
Did you just leave the cum on him as he slept on?

11/5/2024 7:17:06 PM(UTC-5)

Source Info:
4686cc3aded04cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv : 0x45CD (Size: 26771 bytes)
4686cc3aded04cd2b4a905fd61562b27.zip/messages/dms/130057235082993676z.csv : 0x9E (Size: 8750 bytes)



From: ████████ ██████
Wish I could

11/5/2024 7:19:51 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065544165.csv :
0x4557 (Size: 26771 bytes)



From: ████████ ██████
Had to clean up quick

11/5/2024 7:19:58 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065544165.csv :
0x44D3 (Size: 26771 bytes)

From: 129340840786880D4519 lukeukcircf0 (owner)
Ok!!!

11/5/2024 7:21:04 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065544165.csv :
0x44E1 (Size: 26771 bytes)
4686cc3adbe84c1204a905fd61562b27.zip/messages/dms/130057235882939363762.csv : 0x9E
(Size: 6750 bytes)

From: 129340840786880D4519 lukeukcircf0 (owner)
He swallow you now?

11/5/2024 7:21:10 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065544165.csv :
0x42E1 (Size: 26771 bytes)



From: ██████████ ████████
Not yet.  He makes an absurd face and spits it out, kind of hysterical actually.

11/5/2024 7:21:33 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv : 0x4317 (Size: 26771 bytes)

From: 128340840786860451 lukeukcirc#0 (owner)
Cute!

11/5/2024 7:23:06 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv :
0x42A5 (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/130057235882936762.csv : 0x9E
(Size: 6750 bytes)

From: 128340840786860451 lukeukcirc#0 (owner)
You ever try his piss?

11/5/2024 7:23:14 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv :
0x42222 (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/130057235882936762.csv : 0x9E
(Size: 6750 bytes)

From: ██████████ ████████
Actually haven't, not really my thing.

11/5/2024 7:26:57 PM(UTC-5)



From: ████████ ████
You into that?

11/5/2024 7:27:03 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4116 (Size: 26771 bytes)

From: 1283408407868804519 lukeukcirc#0 (owner)
Yea!

11/5/2024 7:27:21 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x40A5 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358329936762.csv : 0x9E
(Size: 6750 bytes)

From: 1283408407868804519 lukeukcirc#0 (owner)
Love it

11/5/2024 7:27:24 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x4031 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358329936762.csv : 0x9E
(Size: 6750 bytes)



From: ▮▮▮▮▮▮▮▮
Nice.

11/5/2024 7:28:13 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616O656044165.csv :
0x3FC2 (Size: 26771 bytes)



From: ▮▮▮▮▮▮▮▮
I bet that can be fun

11/5/2024 7:28:23 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616O656044165.csv :
0x3F43 (Size: 26771 bytes)



From: ▮▮▮▮▮▮▮▮
I've pissed on partners before but never tasted it

11/5/2024 7:28:36 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616O656044165.csv : 0x3EA5 (Size:
26771 bytes)

From: 1283408407868804510 lukeukcircff0 (owner)
I love to drink it

11/5/2024 7:29:19 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616O656044165.csv :
0x3E26 (Size: 26771 bytes)



From: ▮▮▮▮▮▮▮▮

11/5/2024 7:30:47 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905f6f51562b27.zip/messages/dms/130344616055044165.csv :
0x3DB8 (Size: 26771 bytes)



From: 1293408407868504519 lukeukcircf0 (owner)

I would LOVE to drink it from boys

11/5/2024 7:31:25 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905f6f51562b27.zip/messages/dms/130344616055044165.csv :
0x3D29 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905f6f51562b27.zip/messages/dms/130057235932993676.csv : 0x9E
(Size: 6750 bytes)

From: ▮▮▮▮▮▮▮▮

Not gonna lie.  That would be fucking hot to watch

11/5/2024 7:31:48 PM(UTC-5)

Source Info:



In the next stage of their Discord chat, the UC indicated that he would be receptive to Carroll's idea of introducing urination-related kinks to the routine of sexual abuse that he inflicts upon his purported child. This exchange followed:



From: ▮▮▮▮▮▮ ▮▮▮▮
I wonder if I could get my boy to do that

11/5/2024 7:33:33 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x39FA (Size: 26771 bytes)

From: 1283408407868604519.lukeukcirc#0 (owner)
You should

11/5/2024 7:33:39 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x35B3 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130057235032993676.csv : 0x9E
(Size: 8750 bytes)

From: ▮▮▮▮▮▮ ▮▮▮▮
It would require some training ha

11/5/2024 7:33:51 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv :
0x38F8 (Size: 26771 bytes)

From: ▮▮▮▮▮▮ ▮▮▮▮
But maybe worth it. really start getting him into to some kinky shit.  Can't have him be
vanilla

11/5/2024 7:34:12 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604165.csv : 0x382A (Size: 26771 bytes)

From: 1293408407868604519 lukeukcircf#0 (owner)

**Exactly**

11/5/2024 7:34:19 PM(UTC-5)

Source Info:
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv :
0x37B8 (Size: 26771 bytes)
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E
(Size: 6750 bytes)

From: 1293408407868604519 lukeukcircf#0 (owner)

**Have him piss on you**

11/5/2024 7:34:24 PM(UTC-5)

Source Info:
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv :
0x3735 (Size: 26771 bytes)
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E
(Size: 6750 bytes)

From: 1293408407868604519 lukeukcircf#0 (owner)

**Suck him and tell him to piss**

11/5/2024 7:34:32 PM(UTC-5)

Source Info:
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/130344616065604465.csv :
0x36AB (Size: 26771 bytes)
4666cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E
(Size: 6750 bytes)

The UC then asked Carroll, "how did you find out you were into boys?" and Carroll responded, "I just get turned on whenever i see them.  It's a physical reaction." Carroll then described what he finds sexually appealing about young boys.  The UC asked Carroll, "how do you get to perv out?" and Carroll responded, "chat to guys," "used to see porn," and "watch boys when I can."  The UC asked Carroll what kind of child pornography Carroll prefers, and Carroll stated that he likes boys "around 10…being bred preferably!!"  Carroll then added, "preferably by multiple guys."   Later, Carroll asked the UC, "Do you like the boy enjoying it – or is that not necessary?" The UC responded that he likes "a little force."  Carroll replied, "Agree.  Very hot.  If he's crying, I get more turned on."   Carroll later added, "several guys on him. Relentless. No

Mercy."  The UC then mentioned his purported child again, and Carroll encouraged the UC to "try

piss fun" and offered more specific instructions on how to introduce the abuse to the purported

child. The following exchange occurred on November 5, 2024:





From: ████████████
Him*

11/5/2024 7:56:21 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x1578 (Size: 26771 bytes)

From: 1283408407868804519 lukeukcircf0 (owner)
Good

11/5/2024 7:56:25 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x15D7 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572359829936762.csv : 0x9E
(Size: 6750 bytes)

From: ████████████
I won't be surprised, I'll have a big grin in my face

11/5/2024 7:56:31 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv : 0x1462 (Size: 26771
bytes)

From: 1283408407868904519 lukeukcirc#0 (owner)

Oh yeah!!

11/5/2024 7:56:53 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x13EC (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1300572350329936762.csv : 0x9E
(Size: 8750 bytes)

From: 1283408407868904519 lukeukcirc#0 (owner)

Would you like to piss on him too?

11/5/2024 7:57:23 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x135D (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1300572350329936762.csv : 0x9E
(Size: 8750 bytes)



From:

Yah.  I would like that

11/5/2024 7:57:46 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x12DC (Size: 26771 bytes)



From:

Piss on my property

11/5/2024 7:57:52 PM(UTC-5)

From: 128340840786680451 9 lukeukcircf0 (owner)

**Fuck yes**

11/5/2024 7:57:58 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x11EA (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1300572355832936762.csv : 0x9E
(Size: 6750 bytes)

From: 128340840786680451 9 lukeukcircf0 (owner)

**Do it**

11/5/2024 7:58:20 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0x1178 (Size: 26771 bytes)
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1300572355832936762.csv : 0x9E
(Size: 6750 bytes)

From: ▮▮▮▮▮▮▮

I will.  Any suggestions on how to broach the topic lol

11/5/2024 7:58:46 PM(UTC-5)

Source Info:
4686cc3aded4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv : 0x10D7 (Size: 26771
bytes)

From: 1283408407868604519 lukeukcirc#0 (owner)

Tell him that piss play is fun
Tell him that if you piss on hjm, he's then allowed to piss on you

11/5/2024 7:59:35 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv : 0x1005 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E (Size: 8750 bytes)

From: 1283408407868604519 lukeukcirc#0 (owner)

Even in your mouth

11/5/2024 7:59:41 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0xF88 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E
(Size: 8750 bytes)



11/5/2024 7:59:49 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0xF18 (Size: 26771 bytes)

From:

I'm working on getting him to stroke and suck me, so this could work

11/5/2024 8:00:18 PM(UTC-5)

From: 1293408407868804519 lukeukcircf0 (owner)

Perfect

11/5/2024 8:00:24 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0xDF-2 (Size: 26771 bytes)
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1300572358829936762.csv : 0x9E
(Size: 6750 bytes)



From: [redacted]

Btw. I am legit by the way, not a fantasy person

11/5/2024 8:00:32 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv : 0xD50 (Size: 26771
bytes)



From: [redacted]

I also love to share

11/5/2024 8:00:37 PM(UTC-5)

Source Info:
4686cc3adedf4cd2b4a905fd61562b27.zip/messages/dms/1303446160656044165.csv :
0xCD2 (Size: 26771 bytes)

From: 1293408407868804519 lukeukcirc#0 (owner)

Hot

11/5/2024 8:01:57 PM(UTC-5)



At Carroll's direction, the UC moved the chat to the Telegram platform, which is a messaging service that uses end-to-end encryption and has a reputation among its users to be a

safer place for engaging in criminal activity due to the platform's history of refusing to respond to legal process. The UC contacted Carroll on Telegram and sent him two images of his purported son.[1] The UC commented, "…Love his tight little tummy, he's super skinny." Carroll responded, "Ideal." The UC stated, "I feel like I let you down hah" and Carroll responded, "It's ok! Anything more?" The UC responded that he had to "be careful" and did not share any more images at that time.

On November 7, 2024, the UC continued his Telegram chat with Carroll and stated that he would have his purported nine-year-old son over the weekend. Carroll then asked the UC, " … Ideally, what would happen with him – and piss? What would be the best case scenario?" The UC then described how he planned to sexually abuse his purported child while watching a movie and added that he would be open to "piss play" if he was "feeling it."



---

[1] The images sent by the UC did not depict a real child.

**Samsam DC**    15:15
On his chest and belly and cock ideally

If it's going well, on his face    15:15

15:15

mmmmm nice

**Samsam DC**    15:15
And he on you?

15:16

I wonder if he would? I had to work on him to reciprocate with sucking and stroking

so I wonder how this would work.    15:16

**Samsam DC**    15:17
You piss first
Then tell him he can "get his own back"!

15:17

oooo make it a game. love that

**Samsam DC**    15:17
Yes!

15:17

would you care if I told him I learned about this from a friend?
👍 🔵

**Samsam DC**    15:17
"What I do – you do!"
💙 ⬛

U like these?    15:18

Carroll then sent the UC three videos depicting adult men urinating on each other in various stages of undress in bathrooms and showers. Carroll asked the UC if he was enjoying the "piss drinking?" and the UC responded, "Fuck yah. Wish they were younger." Carroll responded with a fire emoji and stated, "I know!!!" The UC also sent a video depicting an adult man standing completely naked in a bathroom. The man's face is visible in the video, along with most of his naked body. The video depicts the man urinating into a plastic cup and then drinking the urine. The UC compared James Carroll's driver's license photo to the image of the man in the video and determined that that both images depicted the same person. Carroll would later delete the video of himself from the chat, but the UC preserved a copy of the video before it was deleted.

The UC and Carroll continued to discuss urinating and sexually abusing the UC's purported son, and the UC asked Carroll, "Can I show him anything fun while I have him?" Carroll asked, "Such as?" and the UC responded, "I'd be open to anything…I like showing him new things." Carroll asked, "You ever show him porn?" and the UC responded, "I've shown him some stuff. Nothing exciting though." Carroll then suggested that the UC show the child pornography involving men urinating on each other in order to prepare him for the abuse that he and the UC had been discussing. The UC offered to "take care" of Carroll by sending him some images or videos depicting the planned abuse. Carroll "liked" the message sent by the UC, he then sent the UC another video to show the child. The video depicted several nude adult men urinating one adult man who was kneeling between the other men:



 On November 9, 2024, Carroll contacted the UC and indicated that he wanted to know how the evening was going.  The UC responded, "Just chilling now … had a nice dinner.  About to start the fun.  I'll fill you in later."  Carroll responded, "Please do!!!!"

On November 10, 2024, Carroll again contacted the UC and said, "Let me know all about" and later asked, "you do any piss?"   The UC responded, "of course.  Had to try your idea" and then explained that he had urinated on his purported son's face.  Carroll responded, "Ideal … Did he piss too?"  Carroll then asked, "any new pics?"

On November 11, 2024, the UC reviewed Telegram and found that Carroll had deleted all of the previous messages in the chat.  The UC messaged Carroll to ask why he deleted the chats:



After deleting all his chats on Telegram, Carroll reconnected with the UC again from the @SAMSAMDC Telegram account on November 11, 2024.  Again, Carroll asked to hear about the abuse of the UC's purported child:

**Samsam DC**                                                          14:35
Mmm good

Hoped to hear more about your weekend...                              14:35

                                                                      14:35
;)

i have to be careful....people wandering around, but wow.             14:36

**Samsam DC**                                                         14:36
Right...

                                                                      14:36
He was shocked at first 👹

**Samsam DC**                                                         14:36
I bet!

Where was he when you pissed?                                         14:36

                                                                      14:36
I had him in the shower.

had already had my other fun with him.                                14:36

**Samsam DC**                                                         14:37
Wow

                                                                      14:37
put him on his knees and told him to close his eyes.



**SD** Samsam DC                                14:37
Perfect

Did he drink any of it?                         14:38

■■■■■■■■                                         14:38
Not this time, but there will be a next time.

## Samsam DC



Not this time, but there will be a next time.

**SD** Samsam DC                                14:38
Did he piss at all too?

■■■■■■■■                                         14:39
No. He was really flustered by the whole experience.

i think that's going to take some training       14:39

**SD** Samsam DC                                14:40
Ok cool

How flustered?                                  14:40

What he do?                                      14:40

■■■■■■■■                                         14:40
enough that i had to hold him a little bit on the shoulder while i did it
😈



On November 14, 2024, the chat continued between Carroll and the UC. The UC told

Carroll that he was going to have his son with him again before Thanksgiving and asked for

Carroll's advice on the "best way to piss play." Carroll then offered specific instructions for how the UC should abuse his child:



Carroll and the UC continued to discuss Carroll's advice, and Carroll repeated the instructions that he had given the UC days earlier, "Tell him it's part of the game. What you do he does." After receiving Carroll's advice and instructions, the UC then offered to send Carroll images or videos of the abuse that they had planned together. The UC asked what Carroll wanted and he responded with specific requests of what he wanted the UC to produce for him during the abuse:



**Samsam DC** — 07:58
Oh ideal

and this is so hot......I'm excited about this. What would you want to see? I want to make this special. — 07:58

**Samsam DC** — 07:59
Hopefully both of you pissing
You sucking him
You cum on his body

I'll try my best on the first part, but I can def. do the other two. — 08:00

**Samsam DC** — 08:00
Ok cool

When i do this, i expect you to not share it also. Gotta stay between me and you — 08:00

**Samsam DC** — 08:00
Of course!!!

## APPLICABLE LEGAL STANDARD

When seeking pretrial detention, the government must establish by clear and convincing evidence that the defendant is a danger to the community. The government must establish by a preponderance of the evidence that a defendant poses a risk of flight. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Each standard is met here.

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United*

*States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). The government is also allowed to proceed by way of proffer in lieu of presenting a live witness to provide testimony. *Id.* at 1209. Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).

Under Section 3142(g), the Court must analyze four factors in determining whether to detain a  defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case should lead the Court to conclude that there is no condition or combination of conditions that would assure appearance of the defendant as required or the safety of any other person or the community were he to be released. *See* 18 U.S.C. § 3142(e)(1).

The crimes of Attempted Coercion and Enticement, in violation of Title 18, United States Code Section 2422(b), and Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code Section 2251(a),  are both crimes of violence involving a minor victim, which under 18 U.S.C. § 3142(e)(3)(E) create a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any person or the community. This presumption is applicable when the government proceeds by proffer. *See e.g. United States v. Texeira-Spencer*, 2021 WL 1535309, *4 (D.D.C. 2021) (finding that "the government may also support that [rebuttable] presumption by proffer"). The presumption "operate[s] at a minimum to impose a burden of production  on  the  defendant  to  offer  some  credible  evidence  contrary  to  the  statutory

presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  The presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released." *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). ).[2]

Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) ("the presumption is not a bursting bubble that becomes devoid of all force once a defendant has met his burden of production.") (internal citations omitted); *and see United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

---

[2] Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

For the reasons that follow, the United States submits that there are no conditions of release that will reasonably assure that the defendant will not flee or pose a risk to the safety of any other person and the community.

### A.  Nature and Circumstances of the Charged Offense

The defendant's alleged conduct in this case is extremely harmful and dangerous to the community. As detailed above, the nature and circumstances of the present offense make clear that this factor weighs heavily in favor of detention because the defendant's criminal conduct involves the attempted sexual exploitation of the most vulnerable members of our community – young children.  Children who are subjected to sexual abuse are severely traumatized and many are unable to escape the profound psychological and emotional damage caused by these offenses, even after they have reached maturity.

The defendant's conduct in this case was particularly egregious in that it involved a sustained effort to persuade an individual he believed was the father of a real nine-year-old boy to engage in humiliating and degrading sexual conduct with his son. As detailed above, the conduct advocated by Carroll would have resulted in the child being forced to urinate on his father; being urinated upon by his father; being made to drink his father's urine; being subjected to oral sex by his father; and finally, being ejaculated on by his father. This degrading sexual humiliation of the purported young boy at the hands of his own father is the kind of life-altering sexual abuse that would certainly be expected to have a devastating impact upon a child for the rest of his life.

Congress recognized the critical need to prevent the excruciating type of harm that was attempted in this case when it enacted Section 2422(b) as part of the Telecommunications Act of 1996, and later, when it passed the Child Protection and Sexual Predator Punishment Act of 1998, which increased the penalty for violation of Section 2422(b).  The House Judiciary Committee

Report on the Child Protection and Sexual Predatory Punishment Act emphasized that the bill was "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computer" and explained that the enhanced penalties were intended to "provid[e] law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children."  H.R. Rep. No. 105-557 at 10, 1998, 1998 U.S.C.A.N. 678, 678. The fact that the child that Carroll sought to abuse was fictitious does not lessen the abhorrent nature of his conduct. The evidence shows that Carroll believed that the child was real and that he was being repeated sexually abused by his father. Carroll expressed approval of this abuse and reveled in recounting the details of the purported child's suffering with the child's abuser.  Over the course of several days, Carroll advised the purported father on how to manipulate the reluctant child into being compliant with his father's humiliating abuse. In addition, Carroll instructed the purported father on specific acts of sexual abuse to inflict on his child so that recordings of this abuse could then be shared with him for his own sexual gratification.  The defendant's attempt to minimize this abhorrent conduct as nothing "beyond words alone" (ECF No. 25, at pg. 9), is profoundly misguided and fails to acknowledge the true nature of the defennat's conduct and the serious harm that Congress intended to prevent by enacting sections 2422(b) and 2251(a).  Clearly, the nature and circumstances of the defendant's offense weighs heavily in favor of detention.

### B.  The Weight of the Evidence Against the Defendant

The evidence against the defendant in this case is strong.  As detailed above, the evidence demonstrates the defendant's intent to overcome the will of the child to facilitate his sexual abuse and that he took multiple substantial steps which corroborated that intent, which are required for a violation of §2422(b). *United States v. Hite*, 769 F.3d 1154, 1164 (D.C. Cir. 2014) ("where an

adult intermediary is involved, the defendant's interaction with the intermediary must be aimed at transforming or overcoming the child's will to violate §2422(b)."); *United States v. Nitschke*, 843 F. Supp. 2d 4, 13 (D.D.C. 2011) (dismissing an indictment for §2422(b) where the evidence failed to demonstrate that the defendant intended to influence the child's assent to engage in sexual activity, finding that the defendant never sought the undercover officer's "help in procuring the fictitious minor," and never asked the undercover to, "pass along any communication whatsoever to the minor." *see e.g. United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (holding that the defendant demonstrated the requisite intent for §2422(b) when he asked the father of a child about "renting her out" and asked what the child thought of the idea); *see also United States v. Farley*, 607 F.3d 1294, 1300-06 (11th Cir. 2010) (holding that the defendant violated §2422(b) when he instructed the mother of a child to watch pornography with the child and sent photos of his genitals to the mother for both mother and child to view); *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007) (evidence sufficient to show attempted coercion and enticement when the defendant communicated "his desire to perform sex acts" on the undercover's children and asked her to tell her children "about his wishes.").

Despite the defendant's assertion that "that there is no evidence that Mr. Carroll 'ask[ed] [the agent] to pass along any communication whatsoever to the minor," (ECF No. 25, pg. 10), the government's evidence indeed shows that the defendant instructed the undercover to communicate specific information to the child,  including:

- "Tell him piss play is fun, if you piss on him, he's allowed to piss on you,";

-  "you piss first then tell him he can get his own back,";

- "What I do, you do."

The government's evidence further shows that the defendant intended for the child to assent to engage in sexual contact with his father. When the undercover officer asked if there is anything he can show his child during his sexual abuse, the defendant asked whether the undercover shows his child pornography, and then Carroll sent the undercover pornography, and said, "would you show him the piss ones to get him in the mood?" This statement shows that Carroll intended the pornography he sent the undercover to be shown to the child for the purpose of overcoming his will and making him more comfortable about engaging in sexual contact with his father. The defendant further demonstrates that he intended to overcome the will of the child for the purpose of facilitating the abuse by following up with the undercover to determine if he successfully abused the child. By providing the undercover with pornography to show the child and telling the undercover what to tell the child to make him compliant, the defendant engaged in multiple substantial steps in pursuit of his intent to overcome the child's will. Given the precedent in this Circuit and courts across the country, the weight of the evidence against the defendant is strong and this factor weighs in favor of detention.

Given the weight of the evidence, there is no doubt that this factor also weighs heavily in favor of detention.

### C.  The History and Characteristics of the Defendant

Although the Defendant has no known criminal history, he has admitted to the undercover officer in this case that he has a long-standing sexual interest in children. In addition, despite knowing that he has strong sexual interest in children, particularly in boys who are 8-12 years old, the Defendant has intentionally pursued a career that has kept him in close contact with children. The Defendant's employment records reveal that he has been working as a teacher or administrator in elementary schools and/or early childhood education facilities, since approximately 1993.

Carroll has acknowledged in Discord chats that he not only feels a strong physical attraction to young boys, but he also has acted on those urges, at least to the extent that he admits that he "watch[es] boys" and he has enjoyed watching child pornography that depicts the violent rape of boys. The defendant's lack of criminal history is not evidence of his law-abiding history, but rather, evidence of his ability to evade detection by law enforcement.

In addition, the evidence reveals that the defendant has engaged in profound and prolonged deception throughout his adult life to hide his sexual interest in children and his criminal sexual behaviors.  The evidence reveals that Carroll regularly spends an extraordinary amount of time on-line chatting with others about his sexual interests, including his sexual interest in children. Records produced by Discord reveal that Carroll was chatting with the UC and other Discord users at all hours, including late into the night, but also during the day when he was at work. Records indicate that after Carroll's Discord account was shut down when he shared a file of suspected CSAM, he immediately set up and registered a new account from an IP address that comes back to his current employer, the National Child Research Center. Records from Telegram reveal that Carroll was using Telegram up until the hour before he was arrested in the early morning hours of November 19, 2024.  In other words, the evidence shows that Carroll was thinking and talking about his sexual interests, including his sexual interest in children, throughout the day and night, both at home and at his workplace, where children were present, and he was able to do this without family or co-workers knowing.

The evidence shows that Carroll was good at a hiding his conduct.  He was working as Head of School at a pre-school while he was attempting to persuade a father to sexually-abuse his purported child.  He took time out of his workday to engage repeatedly in these communications. He took steps to hide the communications, by suggesting that he and the UC move their chats to

Telegram, and by periodically deleting his messages. Yet even though he appeared to be concerned about getting caught, this fear was never enough to curb his repeated and persistent efforts to pursue his own sexual gratification by discussing and encouraging the sexual abuse of children.

In the case of *United States v. Gregory Todd Numan*, Clinical Psychologist Darrel Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending. *See United States v. Gregory Todd Numan*, 16-cr-65 (D. Alaska, 2018). As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses
> are among the most undetected offenses that there are. This
> is not like bank robbery or murder, where it's generally assumed
> and expected that it's going to be detected and reported. We know
> from research that about only about five percent of sexual offenses against children
> are ever reported.
>
> Of those, of that five percent, about another five percent
> result in a conviction. So we're talking about an exponentially
> small number of offenses that are reported and accounted for.
> So it's sort of akin to saying there were only four drunk people in
> New Orleans in Mardi Gras this year because there were only four
> arrests for public intoxication, and it's not a good representation of what's actually
> going on out there. So to say it without the qualifier that,
> hey, this is a gross underestimate, but you know, so far, this is what
> we've been able to find, I think, is misleading and very, very
> dangerous."

at pages 22-23. *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also*

D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).

Moreover, the defendant is a British citizen present in the United States on legal permanent resident status. Given the Defendant's status as a foreign citizen and in light of the significant prison sentence that the Defendant is likely to face if convicted, including a fifteen-year mandatory minimum sentence, it is reasonable for this court to find that there is both a serious danger to the community and a serious risk of flight posed by the Defendant based on his history and characteristics.

### D.  The Nature and Seriousness of the Danger to any Person or the Community

The defendant poses a danger to the community if released because of the ease with which he was able to commit this offense. He was able to communicate with an electronic device over the internet, both at work and at home, without the knowledge of his co-workers or family members, at all hours of the day and night, to attempt to sexually exploit the purported child in his case.

The defendant committed this offense using the internet and electronic devices, which are easily available to the defendant if he is released. Courts have found that easy access to these devices weighs in favor of detention because home confinement cannot ensure that the defendant will not have access to devices. The Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a

clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As a general matter, in this District, defendants charged with offenses involving the sexual exploitation of children are detained pre-trial barring exceptional circumstances. This is due to the difficulty in monitoring a defendant's compliance with pre-trial release given that any defendant facing a charge involving the sexual exploitation of a minor is generally required to be on home confinement, have no access to electronic devices, no access to the internet, and no contact with children. In order to consider pre-trial release, the defendant must have a third-party custodian who is capable of enforcing the conditions of pre-trial release, ensuring 24-hour monitoring of the defendant, and notifying the pre-trial services officer of any violations. As of the submission of this motion, the defendant has proposed only his wife as a third-party custodian. The defendant's wife was present during much of the time that the defendant was actively committing the present

offense, and she apparently had no idea it was happening.  The defendant has demonstrated himself to be very effectively at hiding his conduct from his wife and there is no reason to believe that this would change if he were to be released into her custody.

Additionally, it's the government's understanding that the defendant's wife resides very lose to school.  If the court finds that the defendant has successfully rebutted the presumption in favor of detention and that the § 3142 factors weigh in favor of release, the defendant should not reside in close proximity to a school or any minors.

Because the defendant can easily reoffend if released and any third-party custodian would be inadequate to ensure that the defendant complies with conditions of pretrial release, the danger the defendant poses to the community is a factor that weighs heavily in favor of detention.

## <u>Conclusion</u>

For the reasons set forth above, including the weight of the evidence against the defendant, the egregious nature of the defendant's conduct, and the other appliable statutory factors, the United States respectfully requests that the defendant be detained pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO

Interim United States Attorney

By:     /s/ *Karen Shinskie*
KAREN SHINSKIE
D.C. Bar No. 1023004
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Ph: (202) 730-6878
Karen.Shinskie@usdoj.gov