**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**v.**<br>**JAMES CARROLL,**<br>**Defendant.** | **Criminal No. 24-cr-544(APM)** |

**STATEMENT OF OFFENSE IN SUPPORT OF**
**DEFENDANT JAMES CARROLL'S PLEA OF GUILTY**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits the following Statement of Offense in Support of Defendant James Carroll's Plea of Guilty to Count One of the Superseding Information charging him with Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).

## I. The Penalties

A violation of 18 U.S.C. § 2252(a)(2) carries a mandatory minimum sentence of five (5) years of imprisonment and a maximum sentence of 20 years; a fine of not more than $250,000, pursuant to 18 U.S.C. § 3571(b)(3), or both; a term of supervised release of not less than five years and up to life, pursuant to 18 U.S.C. § 3583(k); mandatory restitution under 18 U.S.C. § 3663A and 18 U.S.C. § 2429; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

## The Elements of the Offenses

To prove that the Defendant is guilty of Attempted Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) the government must prove beyond a reasonable doubt that:

1. The defendant knowingly attempted to receive any visual depiction;
2. Using any means or facility of interstate or foreign commerce; or that has been

shipped or transported in or affecting interstate or foreign commerce, or which contain materials which have been mailed or so shipped or transported;

3. by any means including by computer; if
4. the producing of such visual depiction would have involved the use of a minor engaging in sexually explicit conduct;
5. the visual depiction would have been of such conduct; and
6. the defendant knew the sexually explicit conduct depicted in the material would have been of a minor.

## II. Factual Proffer

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the Defendant said, is it a recitation of all that the Defendant said or did.

The Defendant James Stewart Carroll has worked as a teacher or school administrator for more than two decades and was the Head of School for an early childhood education center, which enrolls children agen two through five years old until his arrest on November 19, 2024.

On September 11, 2024, the Defendant -- using an account on the mobile application Discord with the display name CIRCUMCISEDLONDONGAY#0 and the user identification number 111684897059399691 -- uploaded a digital file to Discord servers that contained suspected Child Sexual Abuse Material ("CSAM"). The image uploaded by the Defendant to Discord servers depicted two naked prepubescent boys lying on a piece of furniture, while one boy leaned in toward the exposed penis of the other boy.

Members of the Federal Bureau of Investigation- Metropolitan Police Department Child Exploitation and Human Trafficking Task Force ("CEHTTF"), obtained a search warrant for Defendant's Discord Account and found that, in addition to the CIRCUMCISEDLONDONGAY#0 account discussed above, the Defendant also used at least two other accounts on Discord, including an account with the display name LUKEUKCIRC#0 and the user identification number 1283408407868604519, and an account with the display name SAMMYSAMUSA#0 and user identification number 1283295411561304108. Using these accounts, the Defendant engaged in conversations with multiple other Discord users about a variety of sexual interests including his sexual interest in boys in the age range of 8-12 years old, and sexual fantasies involving activities such as the circumcision of young boys and men, urinating on boys and men, and the physical/surgical removal of the men's penises.[1]

On November 5, 2024, an undercover law enforcement officer (UC) assigned to CEHTTF working out of a satellite office within the District of Columbia contacted the Defendant at his LUKEUKCIRC#0 Discord account. At approximately 2:49 pm that day, the Defendant responded to the UC and asked, "You found me and friended me?" The UC responded that he had been looking for other people interested in circumcision to which the Defendant responded, "oh nice...love circ."

The UC told the Defendant that he had "no limits except scat. Hate that" and the Defendant responded, "SAME!!." The UC stated, "Younger the better" and the Defendant reported, "Ooo nice...Tell me more about that..." The UC stated that he was interested in "smooth and innocent...preferably little boys but girls do it for me too. You?" The Defendant responded, "Boys only" and stated his age preference was "8-12."

[1] Other subjects discussed during these chats included, but were not limited to, nudity/exhibitionism; castration; Mr. Carroll's personal experiences as a boy, including his own abuse as a child; and adult gay pornography.

The UC asked the Defendant if he had any "experience" and the Defendant responded, "Just hoping/dreaming/fantasizing u?" The UC told the Defendant that he is the father of a nine-year-old boy that he has custody of every other weekend. The Defendant asked the UC what he had done with the purported nine-year-old boy and the UC stated that he had orally and digitally sexually abused the boy, along with ejaculating on the child. In response, the Defendant said, "Oh that's lovely…Mmmmm…I love that u cum on him." The Defendant asked, "where on his body?" to which the UC replied, "his tummy and chest. Sometimes on an ass cheek." "Those were the good ol days." The Defendant continued, "Ah yeah!!! What age u do that?" The UC replied, 2-5ish. I had to get smart and start training him. The Defendant continued, "did you just leave the cum on him as he slept on?" and the UC replied, "wish I could. Had to clean up quick." The Defendant replied "Ok!!!" and asked, "he swallow you?" The UC replied, "Not yet. He makes an absurd face and spits it out, kind of hysterical actually." The Defendant replied, "cute!"

The Defendant asked the UC, "You ever try to piss?" and the UC responded, "Actually haven't, not really my thing. You into that?" The Defendant replied, "Yea! Love it." The Defendant stated, "I love to drink it…I would LOVE to drink from boys." The UC stated, "I wonder if I could get my boy to do that" and the Defendant replied, "You should." The UC replied, "It would require some training ha. But maybe worth it, really start getting him into to [sic] some kinky shit. Can't have him be vanilla." The Defendant replied, "you should" then stated "…Have him piss on you…Suck him and tell him to piss."

The UC asked the Defendant how he discovered that he was sexually interested in "boys," and the Defendant stated, "I just get turned on whenever I see them. It's a physical reaction." The UC asked what he liked about them and the Defendant replied, "Smooth perfect bodies. Little cocks and balls. Hairlessness. Skinny bodies. Blonde Hair." The UC asked the Defendant how

he "perv[s] out" and the Defendant responded, "Chat to guys. Used to see porn. Watch boys when I can." The UC asked if the Defendant had a "favorite vid" and the Defendant responded, "oh from years ago. Fucking!!" The UC asked "ever see the Matt ones?" and the Defendant replied, "what are they?" The UC stated, "the red head guy with the little boy. He's in a room with wood paneling," and the Defendant replied, "Oh. Too young. I like around 10. Being bred preferably !!" The UC stated, "Yah I realized that after I asked lol, not your speed. Mmmm yes, love seeing a boi pussy getting railed." The Defendant responded, "Yes! Preferably by multiple guys."

The Defendant then asked the UC, "Do you like the boy enjoying it – or is that not necessary?" The UC stated that he didn't mind a "little force", and the Defendant replied, "Agree. Very hot. If he's crying, I get more turned on." The Defendant then said, "Fuck fuck yes. Several guys on him. Relentless. No Mercy."

The UC stated, "Excited to see my boy again" and the Defendant responded, "Mmmm good!!!! Try piss fun." The UC asked, "…Any suggestions on how to broach the topic.." Defendant replied, "Tell him that piss play is fun. Tell him that if you piss on hjm, he's then allowed to piss on you. Even in your mouth."

Approximately 5 hours after the chat began on November 5, 2024, he UC stated, "BTW. I am legit by the way, not a fantasy person." Mr. Carroll did not respond. The UC followed up, five seconds later, "I also love to share." Defendant responded, "Hot." The UC told the Defendant, "I have some PG stuff if you're interested?" and the Defendant advised the UC, "Better on Telegram," referring to the mobile application Telegram. The Defendant then provided the UC with his account Telegram account, @SAMSAM_DC, and stated, "See you there."

The UC contacted the Defendant at his @SAMSAM_DC account via Telegram direct messenger and forwarded two photographs of his purported son to him. The photographs

appeared to be of a person's torso only.[2] The UC stated "…Love his tight little tummy, he's super skinny." The Defendant replied, "Ideal." The UC then stated, "I feel like I let you down hah" and the Defendant responded, "It's ok! Anything more?" The UC advised that he had to be careful and will not share sexually explicit images of his child until he completely trusts a person. The Defendant responded, "Is cool."

On November 7, 2024, the UC continued his conversation with the Defendant on Telegram and stated that he would have custody of his purported nine-year-old son over the weekend. The UC stated that he was "excited" because he was "seeing someone special this weekend" and the Defendant responded, " I bet. Thoughts of piss?" The UC stated, "I'm thinking about it. I'm intrigued with how he might respond." The Defendant replied, "fuck yeah" and the UC added, "and I've been watching some piss porn…" The Defendant replied "Mmmm I LOVE piss porn. Ideally, what would happen with him – and piss? What would be the best case scenario?" The UC then stated, "I want to watch a movie with him and just massage him, stroke his little cock, suck it, and then have him do the same to me. He's always been receptive to kissing so I want to get my tongue in his little mouth, taste him. Then take a shower and if I'm feeling it do some piss play." The Defendant replied, "And he pisses? You piss? Where? Any good piss porn to share here?"

The UC stated, "I think I want to piss on him. Any suggestions on where? I'm new □"The Defendant replied, "On his chest and belly and cock ideally. If it's going well, on his face." The Defendant then asked, "And he on you?" The UC stated that he had to train his purported son for sexual abuse and asked, "so I wonder how this would work." The Defendant then wrote, "You

[2] The UC did not distribute any media files of a real child. He did not share any images of a face, genitalia, or any sexually explicit or pornographic content.

piss first. Then tell him he can "get his own back." The UC replied, "oooo make it a game. love that" and the Defendant affirmed, "Yes!"

The UC asked the Defendant if he would care if he told his purported son he learned "this from a friend." The Defendant liked the message and then further instructed, "What I do – you do" referring to what the UC could tell his purported son about how to engage in "piss play." The Defendant then forwarded the UC three videos of adult males urinating on each other in various stages of undress in bathrooms and showers. The Defendant asked if the UC was enjoying the "piss drinking?" and the UC advised, "Fuck yah. Wish they were younger." The Defendant liked the UC's message with a fire emoji and stated, "I know!!!" The Defendant then asked the UC, "You like seeing vids of guys drinking their own piss?" and the UC replied, "I'm a degenerate. I'm interested."

The Defendant then forwarded a video of himself to the UC. In the video, the Defendant urinates into a plastic cup and then drinks the entire cup of urine. The Defendant later deleted this video from the Telegram chat while leaving all the other messages, pictures, and videos alone.

The Defendant continued to message the UC and discussed urinating on and sexually abusing the UC's purported nine-year-old son. The UC asked the Defendant, "Can I show him anything fun while I have him?" The Defendant asked, "Such as?" and the UC responded, "I'd be open to anything…I like showing him new things." The Defendant asked, "You ever show him porn?" and the UC stated, "I've shown him some stuff. Nothing exciting though." The Defendant asked, "Would you show him the piss ones to get him in the mood?" The UC stated that he would show his purported son the videos and asked if the Defendant had anything good to show the son too.

The Defendant then forwarded a video of several nude adult males urinating on one nude adult male kneeling between all the other males. The Defendant stated, "A great group one."

The Defendant continued to discuss the abuse of the UC's purported nine-year-old son over the weekend. The UC told the Defendant that he would have his phone during the abuse and would "take care of him" on Sunday morning. The Defendant responded to the message, suggesting interest.

On November 9, 2024, the Defendant contacted the UC and asked how the evening was going. The UC responded, "Just chilling now…had a nice dinner. About to start the fun. I'll fill you in later." The Defendant responded, "Please do!!!!

On November 10, 2024, the Defendant messaged the UC and stated, "Let me know all about" and later in the day asked, "You do any piss?" The UC stated, "of course. Had to try your idea" and indicated that he had urinated on his purported son's face and the Defendant replied, "Ideal…Did he piss too?" The Defendant then asked, "Any new pics?"

On November 11, 2024, the UC reviewed Telegram and found that the Defendant had deleted all of the messages between himself and the UC. The UC messaged the Defendant, "???" and asked why the Defendant deleted the chats. The following exchange occurred between the UC and Defendant on his @SamsamDC account:

***11 November 2024***

UC: ?????

Samsam DC: Back! U?

UC: lol i thought you ghosted me when you deleted

everything Samsam DC: No - I just do that with all my messages

periodically

| | |
|---|---|
| | Smart to do |

*12 November 2024*

After some initial discussion regarding work, the following exchange occurred:

| | |
|---|---|
| UC: | theres always time to chat |
| Samsam DC: | Mmm good |
| | Hoped to hear more about your weekend… |
| UC: | i have to be careful....people wandering around, but wow. |
| Samsam DC: | Right… |
| UC: | He was shocked at first 🙀🙀 |
| Samsam DC: | I bet! |
| | Where was he when you pissed? |
| UC: | I had him in the shower. |
| | had already had my other fun with him. |
| Samsam DC: | Wow |
| UC: | put him on his knees and told him to close his eyes. |
| Samsam DC: | Perfect |
| | Did he drink any of it? |
| UC: | Not this time, but there will be a next time. |

Samsam DC: Did he piss at all too?

UC: No. He was really flustered by the whole experience.

i think that's going to take some training

Samsam DC: Ok cool

How flustered?

What he do?

UC: enough that i had to hold him a little bit on the shoulder while i did it 😳😳

Samsam DC: Fuck yeah

UC: he was a good boy though. He's getting a new game 😂😂

Samsam DC: Yes!!!

UC: yah, this is part of my fun now

great addition

Samsam DC: Pefect

It is

Piss is the best

UC: it's fucking hot. i never knew i would be into this.

Samsam DC: I adore it

Always have

Actually ever since I was a boy too

UC: def love the idea of pissing on property like a dog. hell yah.

fuck yah... tell me more 😈😈

Samsam DC: Boys at school would show off their pissing at the group urinal

Some would drink it too

UC: mmmm naughty

*14 November 2024*

UC: Well hopefully we can catch up today. I had a thought

Samsam DC: Yeah? What's that?

UC: well. I'm going to have him again before Thanksgiving and I've gotten over the first time with piss. So now I want to do it right soooooooooo

Samsam DC: Yeah??

UC: I'm gonna ask my perv buddy the best way to piss play since the first time was the first time [laughing emoji]

(you're my perv buddy)

Samsam DC: Mmm yea!

UC: I want to make sure I'm setting this up to keep going into the future

Samsam DC: You need to piss all over his entire body

Hard stream on to his cock

Then he must swallow you

Then do the same to you

UC: mmmmmm yes

I can def handle my end, it's just a matter of convincing him to piss on me.

Samsam DC: Yeah!!

UC: how i can make that part easy for me, because I do want to feel his piss on me

Samsam DC: You need it!

UC: I know I do, just ant to make sure I get it.

Samsam DC: Tell him it's part of the game What you do, he does

UC: mmmmmhhhmmm i mean he's trained so that should work, just because I want this to work ha

Samsam DC: Yeah! It should!

UC: 😈

The other part is something for you. I think I figured out how to do it so our faces are covered when I record...

Samsam DC: Oh ideal

UC: and this is so hot.....I'm excited about this. What would you want to see? I want to make this special.

Samsam DC: Hopefully both of you pissing

You sucking him

You cum on his body

UC: I'll try my best on the first part, but I can def. do the other two.

Samsam DC: Ok cool

UC: When i do this, i expect you to not share it also. Gotta stay between me and you

Samsam DC: Of course!!!

UC: I'm like just as excited for him to try to piss on me as I am to make something for you.

Gotta say thank you for getting me out of my vanilla vibe 😂😂

Samsam DC: Good!!

UC: I think when he gets older and starts finding his own people to fuck he'll be happy he's got some new moves too 😈😈

but until then his tiny little ass is my urinal

🔥🔥

Samsam DC: Yes

He’s gay, right?

The Defendant was arrested on November 19, 2024, and pursuant to a search warrant, members of the CEHTTF seized the Defendant’s black iPhone, which he used to send the above-described messages.

Respectfully submitted,

*Karen Shinskie*

Karen Shinskie
Assistant United States Attorney

**DEFENDANT’S ACCEPTANCE**

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I have read every word of this Statement of the Offense and reviewed it with my attorney. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged.

Further, I have discussed with my attorney Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I knowingly and voluntarily waive the rights that arise under these rules in the event that I withdraw my guilty plea, withdraw from my Plea Agreement **after signing it**, or breach my Plea Agreement. I understand that, in such instances, the Government will be free to use against me, directly and indirectly, in any criminal or civil proceeding, any statements I have provided pursuant to the Plea Agreement, **after it is signed**, or after entry of the Plea Agreement, including any statements I made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 10/6/2026

James Carroll

JAMES CARROLL
Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have read this Statement of Offense and reviewed it fully with my client. I concur in my client's desire to agree to this Statement of the Offense as true and accurate.

Further I have discussed with our client Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I have discussed with my client that, **by signing the Plea Agreement**, my client waives the rights that arise under these rules in the event my client withdraws his guilty plea, withdraws from the Plea Agreement **after signing it**, or breaches the Plea Agreement.

Date: 10-6-2026

Jon Jeffress Esq.
Attorney for Defendant